Estate of Edgar M. Naser, Deceased.

Argued April 18, 1933. Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*John R. Keister*, for appellant.

No appearance and no printed brief for appellee.

Opinion by Cunningham, J., October 2, 1933:

By the provisions of a final decree of distribution, entered by the court below in the estate of Edgar M. Naser, the fee of John R. Keister, Esq., for legal services rendered the executor was reduced from $275 to $225 and the executor surcharged with the difference. This appeal was then taken by Keister; no appearance was entered or brief filed for any other party in interest.

The only question involved is whether the conclusion of the learned president judge of the orphans' court is supported by evidence. A paragraph from his opinion reads:

"The exceptant [appellant] offered in evidence an itemized statement of claim. A number of very reputable attorneys testified that $300 would be a very moderate fee for the services rendered. This is probably true. However, it is apparent that a large part of the services were absolutely unnecessary and should have been avoided."

The concession that $300 would be a moderate fee for the services actually rendered removes from this case the point upon which most controversies of this nature turn—the value of the services. Appellant challenges the statement that part of the services rendered by him were unnecessary.

These facts appear from the record: The decedent died August 19, 1930, leaving a will, dated May 5, 1928, by which he gave his real and personal estate equally to his three sons and appointed John O. George the executor thereof. George retained appellant as his attorney and the will was duly probated. Decedent's widow, who seems to have been ignored in the instrument, elected to take against its provisions. The estate was comparatively small; the appraisers were able to find personalty to the value of only $54.50; decedent's real estate, however, consisted of a number

of improved lots of the aggregate market value (as asserted by the widow) of approximately $6,000.

Friction soon developed over the settlement of the estate; some personal property which the executor said he knew the decedent possessed could not be found; appellant made several trips to the residence at Cavittsville, some distance from the county seat, to assist in the adjustment of these matters.

The executor, without notice to the widow or devisees, petitioned for an order to sell the real estate for the payment of decedent's debts; the widow objected and offered to furnish the amount necessary to pay the debts—$2,350—to be secured by a mortgage on the real estate; the proceedings to sell were abandoned, the offer of the widow was accepted, and the mortgage executed under the direction of the court.

Other applications to the court below were necessitated by disputes over the right to collect rents and liability for repairs.

In the opinion filed in the first audit, the court said: "A number of exceptions have been filed to the account of the executor in [this] case. An extraordinary amount of bitterness has been manifested in these proceedings. It appears to the court that both sides are somewhat to blame. Certainly, the executor is not entirely guiltless. Living within a few feet of the home of the widow, it seems inexecusable that he should undertake to sell the real estate of the decedent without consulting any of the interested parties. On the other hand, it is apparent that the widow was bent on making it just as difficult as possible to settle the estate. Thus all along the way we seem to be confronted by these unfortunate attitudes. The executor had a legal right to present a petition for the sale of real estate without consulting anyone, although it is exceedingly bad practice."

There is no evidence, however, that appellant was

responsible in any degree for the conditions thus described.

In the first decree of distribution the fee of appellant was reduced from $275 to $150; upon his exceptions the matter of the reasonableness of his charges again came on for hearing. The testimony of appellant, the executor, and five members of the bar, was taken; no attempt was made to controvert the facts stated by appellant and the executor, or to offer opposing professional opinions.

At this hearing appellant submitted his itemized account against the estate for his services. It may be thus summarized:

(1) Routine legal work and expenses in probating will, supervising appraisement, adjusting taxes, stating account, uncontested audit, etc. ............................. $132.00

(2) Conducting contested proceedings for sale of real estate ..................... 82.50

(3) Preparing and concluding proceedings for mortgaging real estate .............. 35.00

(4) Preparing petition and obtaining decree relative to collection of rents ............ 20.00

(5) Proceedings with respect to repairs .... 50.00

(6) Preparation of briefs ................. 60.00

(7) Contested audit ..................... 25.00

Total ............................. $404.50

Appellant's testimony was that, by agreement with the executor, he reduced the above amount to $275. In the light of the evidence adduced by appellant at the second audit, the court below increased the previous allowance of $150 to $225. The services which the court below considered unnecessary were thus referred to in its opinion: "For instance, in the appraisement of the personal property, the fiduciary would indeed be a helpless, useless official if it were

necessary to have his attorney present to aid in preparing an inventory in an estate of. $54.50. In the item, 'fixing of Transfer Inheritance Taxes,' there is no evidence of any contest. So too, the trips to Cavittsville and Trafford might have been avoided, as well as numerous conferences."

Reference has already been made to the evidence that appellant did not go to the residence merely to assist in making an inventory of a few articles, but because of a dispute with respect to the ownership and by reason of some difficulty in gaining access to the house. Although there is no evidence of any controversy in connection with the settlement of the inheritance taxes, certain data had to be assembled, prepared and filed.

Without prolonging the discussion by detailed references to the testimony, it is sufficient to say that, upon a careful reading of the record, we are unable to find therein any evidence supporting the conclusion that "a large part of the services were absolutely unnecessary and should have been avoided."

We know the able and experienced judge of the court below made the reduction through what he believed to be the proper exercise of the discretion vested in him to control the amount of charges of this character, but we feel, in this case, that the undisputed evidence was not given the consideration it demanded.

The appeal is sustained and the record remitted so that the final schedule of distribution may be amended in accordance with this opinion. Costs of this appeal to be paid by the original exceptants below.